UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLINTON JAY THORN

      Plaintiff,

                                 Case No. 1:07-cv-155

v

                                 Hon. Wendell A. Miles

NORTHSIDE HOSPITAL and
PRINCIPAL LIFE INSURANCE COMPANY,

      Defendants.

_____/


OPINION AND ORDER ON DEFENDANT NORTHSIDE HOSPITAL'S
MOTION FOR SUMMARY JUDGMENT


Plaintiff Clinton Jay Thorn originally filed this action *pro se*, asserting claims against his former employer, Northside Hospital ("Northside" or "the hospital"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* and its amendments contained within the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*   Plaintiff later filed an amended *pro se* complaint virtually identical in all respects to the original complaint, with the exception of adding Principal Life Insurance Company ("Principal") as a second defendant.  Plaintiff alleges that his claims arise from "the denial of health insurance continuation and denial of plan information" regarding health and life insurance benefits.  Amended Complaint at 2, ¶ 3.

The matter is currently before the court on a motion by Northside for summary judgment (docket no. 39).  Plaintiff, who is now represented by counsel, has opposed the motion.   For the reasons to follow, the court grants the motion in part and denies it in part.

**I**

The court has previously granted a motion by defendant Principal for summary judgment. The majority of the relevant facts are largely the same as those detailed in the court's Opinion and Order on that motion, and the court will not repeat them here.   Additional facts relevant to the current motion are detailed below.

**II**

The same familiar summary judgment standards apply as much to an ERISA action as they do to any other civil action – at least where the claim is not one for wrongful denial of benefits.  See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 617-620 (6th Cir.1998) (noting "great confusion among the district courts as to the proper method of adjudicating proceedings brought under 29 U.S.C. § 1132(a)(1)(B)") (Gilman, J., concurring).  Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may satisfy this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to

2

support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party satisfies its burden, the party opposing the motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Id. at 255. However, the mere existence of a "scintilla of evidence" in support of the non-moving party's position is insufficient. Id. The party who bears the burden of proof must present a fact question as to each element of a challenged claim. Davis v. McCourt, 226 F.3d 506, 511 (6th Cir. 2000).

Although plaintiff's *pro se* amended complaint seeks as relief, in part, "[r]einstatement of health insurance without penalty[,]" Amended Complaint at 3, ¶ 10(B), this relief is no longer at issue insofar as plaintiff states that he has purchased other insurance coverage and, in any event, he has not disputed that his COBRA coverage was reinstated.[1]   Therefore, because plaintiff no longer has a live claim for denial of benefits, exhaustion of administrative remedies is not required. See, e.g., Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710, 719 (6th Cir. 2005) ("Beneficiaries seeking to recover improperly denied benefits must first exhaust the administrative remedies available to them, unless doing so would be futile or would furnish inadequate relief"). The court also need not be concerned with the application of any deferential standard of review which may be applicable to such claims. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (denial of benefits "is to be reviewed under a de novo standard

---

[1]In its motion, Northside states that plaintiff's health coverage was reinstated. Defendant Northside Hospital's Brief in Support of Motion for Summary Judgment at 6. Plaintiff has not disputed this statement.

3

unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan").  The court likewise need not be concerned with limiting its review of evidence to that contained in the administrative record. See Wilkins, 150 F.3d at 615 (in ERISA action alleging denial of benefits, district court review was confined to the record that was before the plan administrator).

## III

Plaintiff and Northside appear to be in agreement that Northside's health and life insurance plans qualify as ERISA plans and that plaintiff was a participant in the plans. Although plaintiff's *pro se* amended pleading is not a model of clarity, plaintiff – who is now represented by counsel – has elaborated on the claims and relief he is currently pursuing.[2] According to plaintiff, he now seeks the following three things:

(1)     Statutory penalties under ERISA, for failure to provide requested plan information regarding his life insurance benefits;

---

[2]By way of a footnote contained in his response brief, plaintiff concedes that his pleadings are not "the polished work of an attorney[.]"  Plaintiff's Response at 5-6 n.3. Nonetheless, plaintiff states, because "it appears that there is no serious or significant dispute among the parties as to what [plaintiff's] legal claims are, it would not seem necessary to amend the pleadings yet again.  However, if the Court deems that such amendment might be useful to the parties, to help narrow the issues in this matter, Plaintiff is more than willing to do so."  Id.
It is not the court's place to instruct a represented party regarding whether amendment would be "useful" to that party's case.  Although plaintiff filed his amended complaint *pro se*, he is now represented by counsel.  Plaintiff's counsel has not sought leave to amend.  Although the deadline established for amendment of the pleadings has passed, this does not – of course – prevent a party from seeking leave to amend.  However, because plaintiff has not sought leave to amend since counsel filed an appearance on his behalf, the court assumes that plaintiff is satisfied with his current pleading.

      (2)      Statutory penalties for failure to provide adequate COBRA election notices regarding a 'secondary event,' i.e., [plaintiff's] disability; and

      (3)      damages for breach of fiduciary duty, related to Defendants' improper termination of [plaintiff's] COBRA benefits.

Plaintiff's Response at 5 (footnote omitted).

In its motion, Northside argues (1) that plaintiff has not presented evidence that Northside breached its fiduciary duty; (2) that plaintiff is not entitled to statutory penalties under either ERISA or COBRA; (3) plaintiff is not entitled to either damages or attorneys' fees.   In his response, plaintiff does not contend that there are any outstanding material issues of fact which preclude summary judgment.  Instead, plaintiff argues that it is he, and not Northside, who is entitled to summary judgment in his favor – although plaintiff has not filed his own separate motion.

## A.  <u>Breach of Fiduciary Duty</u>

Plaintiff alleges that Northside is liable to him for breach of fiduciary duty because it improperly terminated his COBRA health insurance benefits and failed to grant him an extension of his COBRA coverage after he was determined to be disabled.

To state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach caused harm to the plaintiff.  <u>Brosted v. Unum Life Ins. Co. of America</u>, 421 F.3d 459, 465 (7th Cir. 2005).  In its motion, Northside does not appear to dispute that it is a fiduciary under the Medical Plan.  However, Northside nonetheless argues that it is not liable to plaintiff for any damages because (1) the temporary denial of a disability extension and

temporary termination of plaintiff's medical coverage was not the fault of Northside; (2) plaintiff

was retroactively granted the extension and any benefits to which he was entitled; and (3)

damages are not available to plaintiff even if Northside did breach its duty.

Northside argues that because plaintiff sent his SSA disability determination to the wrong

department at Principal, it was plaintiff himself who was largely at fault for any delay in

receiving an extension of his COBRA coverage.  Although plaintiff argues that he merely sent

the SSA determination "to the individual at Principal with whom he had all prior

communications – Ms. Repp[,]" Plaintiff's Response at 12, the undisputed facts show that the

COBRA election notice which plaintiff received after the conclusion of his employment directed

him to send any request for an extension to Dana South at Principal.  Defendant's Exhibit 3 at

16.  Moreover, the undisputed facts also show that not only did plaintiff send the SSA

determination to the wrong individual in the life and disability insurance department instead of in

the COBRA or medical insurance department, the letter he sent clearly refers only to life

insurance issues and makes no mention of medical insurance.  Defendant's Exhibit 7.  Under the

circumstances, it can only be concluded that if there was an administrative error, it was

plaintiff's own actions which caused it.  Northside did not cause the error, nor did Principal, for

whom Northside was ultimately responsible.

In its motion, Northside also contends that when it eventually became aware that plaintiff

was in fact entitled to a disability extension of his coverage, it rectified the situation immediately

and had plaintiff's coverage reinstated retroactively.  Plaintiff has not disputed this contention in

his response.  Under the circumstances, the court concludes that plaintiff has not demonstrated

the existence of a material issue of fact on his claim that Northside is liable for a breach of

fiduciary duty.

As noted above, Northside also argues that the damages plaintiff seeks are not available to him even if it could be determined that Northside breached its fiduciary duty.  Once again, plaintiff has not responded to this argument.   The court concludes that Northside is correct that plaintiff is not entitled to extracontractual damages, such as the cost for procuring other insurance coverage.  Relief  for a breach of fiduciary duty under ERISA is generally limited to recovery on behalf of the plan.  See Mertens v. Hewitt Associates, 508 U.S. 248, 252 (1993) ("The fiduciary is personally liable for damages ('to make good to [the] plan any losses to the plan resulting from each such breach'), for restitution ('to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary'), and for 'such other equitable or remedial relief as the court may deem appropriate,' including removal of the fiduciary"); see also Adcox v. Teledyne, Inc., 21 F.3d 1381, 1390 (6th Cir.1994) ("a cause of action under § 1132(a)(2) permits recovery to inure only to the ERISA plan, not to individual beneficiaries").  Extracontractual compensatory damages are not available.  Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985).  Neither compensatory nor punitive damages are available to an individual for a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Allinder v. Inter-City Prods. Corp., 152 F.3d 544, 551-552 (6th Cir. 1998).   Because plaintiff is legally entitled to no further relief apart from what he already received, in the form of reinstatement of his coverage and payment of his medical expenses, Northside is entitled to judgment in its favor as a matter of law on plaintiff's claim for breach of fiduciary duty based on the allegedly improper termination of his COBRA coverage.

**B.  Failure to Provide COBRA Election Notices Regarding a "Secondary Event"**

Northside's argument that it is not liable to plaintiff for failing to provide him with a COBRA notice regarding a "secondary event" appears to be based on the same facts as its argument that it is not liable for a breach of fiduciary duty:  Northside places the blame on plaintiff.  According to Northside, plaintiff could not have been provided with notice of a "secondary qualifying event" because plaintiff did not "properly address and identify his disability determination."  Northside's Brief at 15.  Plaintiff, in turn, argues that because Northside does not dispute that he should have been provided "with a required COBRA notice, relative to the 11-month extension of COBRA due to [plaintiff's] disability determination by the [SSA,]" Plaintiff's Response at 11, then he is entitled to COBRA penalties.

When COBRA applies, its rights include the opportunity to continue health care coverage under the employer's plan if a "qualifying event" occurs.  29 U.S.C. § 1161(a).  The administrator of a group health plan is required by law to notify a "qualified beneficiary" of his or her COBRA rights upon the occurrence of specified "qualifying event[s]."  29 U.S.C. § 1166(a)(4).  Section 1132(c) authorizes the imposition of penalties for noncompliance with these notice requirements.[3]

However, a "covered employee," such as plaintiff, is only a "qualified beneficiary" for purposes of COBRA in the event of the termination of his employment or the reduction of his

_____

[3]Section 1132(c)(1) provides, in pertinent part, that "[a]ny administrator . . .  who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

working hours.  29 U.S.C. §§ 1167(3)(B) and 1163(2).[4]  Here, there is no dispute that plaintiff received written notice of his COBRA rights at the time his employment ended, which was a "qualifying event."  Plaintiff in fact actually completed and returned the COBRA Continuation Election Form, resulting in the continuation of his health insurance coverage.  (The notice which plaintiff was provided at the time of his election included information about requesting an 11-month extension of the continued coverage in the event plaintiff was determined to be disabled.  Defendant's Exhibit 2 at 2, 5, 15.)  Although plaintiff was clearly provided with notice of his rights, he has – for whatever reason – formed the belief that he was entitled to an additional notice of his COBRA rights based on the occurrence of a "secondary" qualifying event consisting of his own disability.

Neither Northside nor plaintiff has properly cited to the law applicable to this claim.  Had the parties properly reviewed the law, they would realize that an employee's own disability is not a second "qualifying event" triggering the duty of an employer or plan administrator to provide an election notice to that employee under the COBRA amendments to ERISA.[5]  Therefore, even though Northside's motion does not question whether plaintiff experienced a second "qualifying event" as a matter of law, the court cannot ignore the relevant law, under which plaintiff has not established that he was entitled to a second COBRA notice beyond that which he was provided

---

[4]A "covered employee" is defined as "an individual who is (or was) provided coverage under a group health plan by virtue of the performance of services by the individual for 1 or more persons maintaining the plan (including as an employee defined in section 401(c)(1) of Title 26)."  29 U.S.C. §1167(2).

[5]The court's Opinion and Order on Principal's motion for summary judgment includes an extensive discussion of the relevant statutory provisions.  The court will not repeat that discussion here.

at the time his employment terminated.  Because plaintiff has not identified a specific statutory basis for his claim that Northside violated a duty to provide him with a second COBRA notice, the court concludes that plaintiff has not stated a claim entitling him to relief based on a failure to provide notice.

## C.  Failure to Provide Plan Information Regarding Life Insurance Benefits

Plaintiff's final claim against Northside is that it is liable to him for statutory penalties under ERISA for failing to provide him with plan information he requested regarding his life insurance benefits.   In its defense on this claim, Northside argues (1) plaintiff did not make a proper request for information; (2) Northside was not required to provide plaintiff with the information he requested because it had already provided plaintiff with plan information during his employment; or (2) alternatively, no penalties should be imposed because plaintiff has received the accelerated life insurance benefits he was eligible to claim and he has therefore not been prejudiced by any technical breach of the duty to provide information.

ERISA provides, in pertinent part, that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4) (footnote omitted).  The statute further provides for the discretionary imposition of penalties in the event of non-compliance.  29 U.S.C. § 1132(c)(1).[6]

---

[6]Section 1132(c)(1) provides in pertinent part that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this
(continued...)

Plaintiff's amended pleading alleges that his written requests for "plan information" were ignored, although it does not indicate what specific legally required documents were not provided.  Amended Complaint at 2, ¶ 6.  Plaintiff's current position is that letters he wrote to both Northside and Principal in March and April, 2006 asking for a "policy book" should be deemed requests for "a description of the benefits available" under the life insurance plan.  Plaintiff's Response at 7.  Plaintiff also argues that the letter he sent to Northside in December, 2006, in which he threatened litigation, referenced a "summary plan description," which should have laid to rest any doubts regarding the information he was seeking.

ERISA has "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents."  Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995).   In order for a court to consider imposing a statutory penalty on a claim based on a failure to provide requested information, the plaintiff must establish (1) that the administrator was required by ERISA to make available to the plaintiff the information he requested, and (2) that the plaintiff requested and the administrator failed or refused to provide the information requested.   Kleinhans v. Lisle

---

[6](...continued)
subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."  This section further provides that each violation "with respect to any single participant or beneficiary, shall be treated as a separate violation."  Although not reflected in the statute, the maximum civil penalty has been increased from $100 per day to $110 per day for violations occurring after July 29, 1997.  29 C.F.R. § 2575.502c-1.

Sav. Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir. 1987).

Northside's first argument in defense against this claim is that plaintiff did not properly request a summary plan description because the only request he made was for a "policy booklet for the life insurance policy."  Northside contends that because it did not have a "policy booklet" and responded by informing plaintiff of this fact, and because plaintiff did not follow up with any other questions regarding his coverage, plaintiff's request was insufficient to support an award of statutory penalties under section 1132(c).

In support of its argument, Northside relies on the case of Hughes Salaried Retirees Action Committee v. Administrator of Hughes Non-Bargaining Retirement Plan, 72 F.3d 686 (9th Cir. 1995), which Northside argues stands for the proposition that ERISA requires "the disclosure of only the documents described with particularity and other instruments similar in nature."  Northside's Brief in Support at 9.  Although Northside purports to quote from the Hughes case, its brief contains no internal page cite to the case for any such quote.  However, if one reads the Hughes case, it is apparent that the court in that action was discussing not the wording of a request for information, but rather what documents the statute requires to be provided in the event of a request.  See Hughes, 72 F.3d at 691 (section 104(b)(4) of ERISA, 29 U.S.C. §1024(b)(4), requires the disclosure of documents "specifically listed" in the statute and documents "similar in nature" to those listed).  Therefore, to the extent that Northside relies on Hughes for the proposition that a plaintiff is not entitled to claim statutory penalties unless his written request described the document sought "with particularity," Northside's reliance is misplaced.

Northside also relies on Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1077 (5th

Cir. 1990) as support for the proposition that an award of statutory penalties is predicated on the administrator's receipt of a "proper written request."  Northside's Brief in Support at 9. However, what the plaintiff contended was a "written request" for a plan description in <u>Fisher</u> was merely a "scribbled note at the bottom of a Social Security award certificate requesting, not Plan documents, but rather 'a copy of the policies covering my contract for salary continuation.'" 895 F.2d at 1077.  Under the circumstances, the court concluded that it was not an abuse of discretion to refuse to award penalties, insofar as there was nothing to indicate that the defendant knew or should have known that the plaintiff had requested a copy of any document relating to the Plan.

Finally, Northside cites <u>Brown v. Aventis Pharmaceuticals, Inc.</u>, 341 F.3d 822, 825 (8th Cir. 2003) for the proposition that "[a]lthough a request does not have to specifically request a SPD [summary plan description], it must, in context, be specific enough to put the administrator on notice that he is requesting the SPD."  Northside's Brief in Support at 9.  In <u>Brown</u>, the plaintiff's attorney wrote formal letters to the employer requesting information about "all benefits," which the employer had promised to send after the plaintiff's termination.  341 F.3d at 824.  A decision awarding $11,550 in statutory penalties was affirmed, with the court rejecting an argument by the employer that it was not liable for penalties because, during the plaintiff's employment, it had previously provided her with a summary plan description.  <u>Id</u>. at 826.

Here plaintiff, like the plaintiff in <u>Brown</u>, sent formal letters which clearly requested information about his life insurance benefits.  Plaintiff's first letter, directed to Principal, requested a "policy book" and was contained within a letter in which plaintiff also asked for a "claim form for accelerated death benefit."  Defendant's Exhibit 4.  In another letter which he

sent directly to Northside, plaintiff indicated his belief that he was "still covered under the hospital group life insurance" and requested "a policy booklet for the life insurance policy." Defendant's Exhibit 5.  Northside then responded that it did not have a policy booklet, but offered telephone numbers plaintiff could call if he needed to have his insurance "verified" or if he required additional information.  Defendant's Exhibit 6.

Northside argues that because there was in fact no "policy booklet" for the life insurance benefit, and because plaintiff did not actually request a summary plan description, it should not be liable for penalties.  However, the court is not convinced that Northside was unaware that plaintiff was requesting that he be provided with a written instrument which described the terms of his life insurance benefit.

There appears to be no dispute that Northside provided a life insurance benefit as part of an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and (3).  Therefore, the plan was required to be "established and maintained pursuant to a written instrument" as provided by 29 U.S.C. § 1102(a)(1).  Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872-873 (7th Cir. 2001).  Because the plan was self-funded, there was no life insurance policy which established its terms.  Cf. Ross v. Rail Car America Group Disability Income Plan, 285 F.3d 735, 739 (8th Cir. 2002) (plan was comprised of summary plan description together with insurance policy). Apparently, if Northside is to be believed, there was also no written instrument – apart from the summary plan description – which contained the terms of the plan.  However, this fact does not in itself excuse Northside from liability for providing plaintiff with the written information which Northside did have about the terms of the life insurance benefit.

The court is likewise unimpressed by Northside's argument that it should be excused

from responding to plaintiff's clear request for information about his life insurance benefits

because, during plaintiff's employment, it provided him with access to a summary plan

description.  ERISA requires employee benefit plan administrators to furnish participants and

beneficiaries with a summary plan description.  29 U.S.C. §§ 1021(a)(1) and 1022(a).  For plan

participants, the summary plan description must be provided within 90 days after the individual

becomes a participant in the plan.  29 U.S.C. § 1024(b)(1)(A).  Plaintiff has not disputed that

Northside satisfied this obligation.  However, even if Northside did previously provide plaintiff

with a summary plan description in satisfaction of its responsibility under 29 U.S.C. §

1024(b)(1)(A), having done so does not excuse Northside from responding to an additional

written request from plaintiff under 29 U.S.C. § 1024(b)(4) after he was no longer employed by

the hospital.  Providing a summary plan description long before the request for information does

not excuse a fiduciary from its duty to respond fully to later inquiries regarding benefits.  Krohn

v. Huron Memorial Hosp., 173 F.3d 542, 550 (6th Cir. 1999).  This is particularly true where the

fiduciary has reason to know that the employee has a particular need for information regarding

benefits.  See id. at 549-551 (employer was liable to plaintiff for lost long-term disability

benefits where plaintiff was disabled in a car accident and her husband met with employer's

personnel assistant to inquire about benefits to which his wife was entitled as a result of her

injury and inability to work); see also Palen v. Kmart Corp., No. 97-2269, 2000 WL 658115, *4

(6th Cir. May 9, 2000) (employer who was aware of former employee's illness was required to

provide information about life insurance benefits in response to request for information breached

fiduciary duty of disclosure).

      Here, the facts show that plaintiff has raised a genuine issue of fact on his claim against

15

Northside for statutory penalties based on the failure to provide him with information he requested in writing regarding the terms of the life insurance plan.  The facts show that plaintiff made a written request for a plan document that described his life insurance benefits.  Plaintiff first directed a written request to Principal – to whom Northside had delegated certain administrative functions – by virtue of his letter of March 8, 2006, when he asked to be provided with "the policy book and terms of coverage" for his life insurance benefit.  Northside's own exhibits show that plaintiff directed a second request to Principal – for "a copy of the policy book for this policy" – by virtue of another letter dated March 30, 2006.  Defendant's Exhibit 4. Northside's own exhibits also show that plaintiff sent a third request  – for "a policy booklet for the life insurance policy" – directly to Northside in a letter dated April 11, 2006.   Defendant's Exhibit 5.  These requests for information about his benefits were made not pursuant to 29 U.S.C. § 1024(b)(1), but pursuant to 29 U.S.C. § 1024(b)(4), which requires that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  Although Northside has established that plaintiff was provided with certain benefits available to him under the life insurance plan, Northside had not shown that it provided plaintiff with the information about his benefits under the plan.  For this reason, the court concludes that Northside has not established that it is entitled to summary judgment in its favor on plaintiff's claim based on the failure to respond to a written request for plan information regarding his life insurance benefits.

Alternatively, Northside argues that the court should rule that plaintiff is entitled to no

statutory penalties because Northside acted in good faith and because plaintiff received any life insurance benefits to which he was entitled and has therefore suffered no prejudice or other harm based on the failure to provide him with plan information.  However, a determination as to whether penalties should be awarded under 29 U.S.C. § 1132(c)(1) is a matter left to the discretion of the district court.  E.g., Neuma, 259 F.3d at 879.  In assessing a claim for statutory penalties, "courts have considered various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.'"  Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 90 (2d Cir.2001) (citation omitted).  "Other circuits have studied the role of prejudice or damages in the inquiry and have concluded that although they are often factors, neither is a sine qua non to a valid claim under section 502(c)(1)."  Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3th Cir. 2002) (citations omitted).

Although the conduct and intent of an administrator in withholding information it was required to provide under ERISA is a consideration relevant to a court's determination whether the case in question justifies the imposition of the statutory penalty, "conduct and intent have no bearing on the court's determination whether its discretionary power under § 1132(c) has in fact been triggered."  Kleinhans, 810 F.2d at 622.  Because the court's task in determining the appropriate amount – if any – of a statutory penalty requires the exercise of discretion based on consideration of multiple relevant factors, it would be premature for the court to resolve the issue on a motion for summary judgment.

Finally, in its motion, Northside also argues that plaintiff is not entitled to an award of attorney's fees in this action, given the absence of bad faith or other prejudice.  However, this

portion of Northside's motion, like its argument that the court should not impose a statutory penalty, is also premature.  For one thing, an award of attorney's fees to either party under ERISA's fee provision is discretionary.[7]  See Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 445 (6th Cir. 2006) (listing factors courts are to consider in deciding ERISA attorneys' fees questions, including the degree of the opposing party's culpability or bad faith, the opposing party's ability to satisfy an award of attorneys' fees, the deterrent effect of an award on other persons under similar circumstances, whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA, and the relative merits of the parties' positions) (citation omitted).   For another thing, a ruling on the issue of attorney's fees generally first requires the entry of a judgment.  See Fed.R.Civ.P. 54(d)(2) (claim for attorney's fees must be made by motion filed after entry of judgment unless applicable substantive law requires fees to be proved at trial as an element of damages).  Because no judgment has been entered and it has not been determined  how much – if any – monetary relief will be awarded to plaintiff, the court is in no position to rule on whether plaintiff will be entitled to an award of attorney's fees.

---

[7]Title 29 U.S.C. § 1132(g)(1) provides as follows:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

18

<u>CONCLUSION</u>

For the reasons stated above, the court grants in part and denies in part Northside's motion for summary judgment.  The motion is granted as to (1) plaintiff's claim for damages for breach of fiduciary duty related to the termination of plaintiff's COBRA benefits, which were later reinstated, and (2) plaintiff's claim for statutory penalties for failure to provide a COBRA notice of a secondary event.  The motion is denied as to plaintiff's claims for statutory penalties and attorney's fees for failure to provide requested plan information.

So ordered this 24th day of June, 2008.


<u>/s/ Wendell A. Miles</u>
Wendell A. Miles, Senior Judge

19